IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUNICE E. PERSYN,          )
                                     )
        Plaintiff,         )     Case No. 04-1119-KI
                                     )
   vs.                       )     OPINION
                                     )
JO ANNE B. BARNHART,       )
Commissioner of Social Security,   )
                                   )
       Defendant.        )

Merrill Schneider
Kimberly K. Tucker
Schneider Law Offices
14415 S. E. Stark Street
Portland, Oregon 97233-2153

     Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Craig J. Casey
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Richard A. Morris
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Eunice Persyn brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Persyn filed applications for DIB and SSI with protected filing dates of September 26, 2000. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Persyn, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on June 18, 2002, as well as at a supplemental hearing on November 13, 2002.

On January 8, 2003, the ALJ issued a decision finding that Persyn was disabled since April 1, 2002, but was not disabled within the meaning of the Act before that date. This decision became the final decision of the Commissioner when the Appeals Council declined to review the

decision of the ALJ. Persyn only seeks review of the portion of the decision denying her benefits before April 1, 2002.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998).  Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.  It is more than a scintilla, but less than a preponderance, of the evidence.  Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision.  Id.  The court must weigh both the evidence that supports and detracts from the Commissioner's decision.  Id.  The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner.  Id. at 720-21.

**FACTS**

I.  The ALJ's Decision

The ALJ found that Persyn had impairments which were severe in combination: recurrent Bell's palsy with diplopia,[1] ischemic white matter disease, and migraine headaches. The ALJ also found that Persyn had nonsevere impairments of hypertension, which was adequately controlled by medication, and depression.  The ALJ discounted the opinions of two psychologists and a third mental health nurse practitioner who found Persyn to be seriously depressed, and also discounted the opinion of Persyn's treating physician who believed that she would miss two or more days of work per month due to psychiatric issues regarding the care of her disabled son.  The ALJ found Persyn's discussion of her symptoms during the period between June 1, 2000, and April 1, 2002, to be only partially credible.  Prior to April 1, 2002, the

---

[1] "[A] disorder of vision in which two images of a single object are seen because of unequal action of the eye muscles."  Merriam Webster's Medical Desk Dictionary 211 (1996).

PAGE 5 - OPINION

ALJ found that Persyn could perform a range of medium work, lifting up to 50 pounds occasionally and up to 25 pounds frequently, and able to sit, stand, and/or walk up to six hours in an eight-hour work day. Based on this residual functional capacity, the ALJ found that Persyn could perform her past relevant work prior to April 1, 2002, but not after and, based on the "grids," was disabled as of that date.

II.     Persyn's History

Persyn, who was fifty-seven years old at the time of the second hearing, claims to have been disabled since June 1, 2000, due to migraine and non-migraine headaches, Bell's palsy, multiple sclerosis, fatigue, and depression. She has a high school education and completed one year of college courses. Persyn has work experience as an educational assistant, a caregiver, and a food products demonstrator.

Persyn was diagnosed with possible multiple sclerosis but her neurologist never confirmed the diagnosis. There was a disagreement about the interpretation of her MRI so follow-up exams were performed over a period of time. Persyn did not want to start drug therapy for the disease. The final neurological exam, performed in May 2002 at OHSU, concluded, "Probability of multiple sclerosis, moderately to extremely low." Tr. 556. Persyn was also treated for depression for many years and suffers from migraine headaches.

Persyn spent 30 to 40 hours a week as caregiver for her elderly and ailing mother, who lived across the street from her, for the five years prior to her mother's death in January 2000. Several of Persyn's family members died during the two years prior to April 2002, with the most recent being her brother in February 2002.

Persyn cares for her eighteen-year-old son who is disabled and confined to a wheelchair because of spinal muscular atrophy. The state provided a caregiver to help Persyn take care of her son for 20 hours of respite care a month. When the caregiver was not present, Persyn took care of her son alone, including lifting him, with the assistance of a hydraulic lift, between his bed and his wheelchair and the toilet, turning him in bed in the middle of the night, bathing him, dressing him, and getting him ready for school. Persyn estimates that she spent six hours a day caring for her son at this point. Family and friends occasionally helped Persyn with her son and also brought the family food a couple of times a week.

In April 2002, the state provided a caregiver 40 hours a week, spread over seven days, starting most days between 11:00 AM and noon. The caregiver does the tasks necessary to take care of Persyn's son and also performs most of the household chores, including cleaning and cooking. Persyn puts her son to bed. Persyn's sister and the caregiver both give accounts of Persyn's depression worsening over time until, by June 2002, Persyn could not summon the energy to perform needed household tasks. Some days she would barely get out of bed.

Persyn testified that at the time of the hearing in June 2002, her depression had gotten so bad that it took her a long time to get up in the morning because she would have panic attacks about facing the day. Some days she is unable to plan a well-balanced meal and buys dinner from the grocery store deli. Persyn does the grocery shopping every day or two, because she cannot handle long lists of items to purchase, and walks her dog on some days. She goes to church once or twice a week and goes witnessing door to door about five or six hours a month. Persyn has a headache a couple of times a week that is severe enough to send her to bed with an ice pack. She treats the headache with over-the-counter medications and occasionally takes

PAGE 7 - OPINION

Tylenol III (with codeine). Persyn sleeps eight or nine hours a night but does not feel rested when she gets up. Her medical records indicates that she suffers from some muscle pain and soreness. Persyn acknowledged that her situation had gotten worse in the year before the hearing.

**DISCUSSION**

Persyn contends that the ALJ improperly rejected her testimony concerning her symptoms prior to April 2, 2002. Persyn argues that the ALJ gave too much significance to the fact that she was her disabled son's primary caregiver before that date. Persyn contends that she had substantial help from friends and neighbors that reduced her caregiving time to about six hours a day, during which she had time to rest between tasks.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

In deciding that Persyn's allegations were not fully credible prior to April 1, 2002, the ALJ considered many pieces of evidence: (1) the extent of her care for her son, six hours a day, prior to getting a full-time caregiver; (2) the significant care she gave to her mother prior to her death in January 2000; (3) her church activities, including witnessing by going door to door; (4) her daily walks of up to a mile; (5) her ability to be active for three to four hours before needing to rest; (6) her ability to take care of her personal needs and all tasks required to run the household for herself and her son, except for vacuuming; (7) playing cards and socializing; and (8) watching television, reading, and using the Internet. This analysis is all supported by the record and gives clear and convincing reasons for partially discrediting Persyn. Consequently, I conclude that the ALJ did not improperly reject her testimony.

Persyn's condition and ability to cope greatly decreased over time due to her depression and increased pain from headaches and muscle aches. Persyn acknowledged this at the hearing and it is documented by the lay witness statements in the record. The ALJ determined that Persyn became disabled under the Act at the time the state provided a full-time caregiver for her son because, as Persyn stated, "everything that's been going on with me I have 40 hours a week due to his condition and my problems." Tr. 622. I conclude that his decision is supported by substantial evidence in the record.

///


///

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

Dated this ___8th___ day of April, 2005.

                                  /s/ Garr M. King
                                  Garr M. King
                                  United States District Judge